# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

|  |  |
|---|---|
| REGINA BARKEN,<br><br>                  Plaintiff,<br><br>v.<br><br>MICHAEL SARENAC, KENT GORDON, JAMES JORDAN, RAENA VRTOCHNICK, and TROY JANKOWSKI,<br><br>                  Defendants. | Case No. 22-CV-783-JPS<br><br><br>**ORDER** |

## 1.    INTRODUCTION

At a status conference on August 4, 2023,[1] the Court ordered the parties in this matter to "craft and file a set of jury instructions outlining [the] elements of [the] operative claims and defenses," identify "what facts are in dispute," and "submit to the Court a plan for how this case is to proceed." ECF No. 57 at 1. The parties have done so, albeit in an uncooperative—and as a result, disorganized—manner, unfortunately one which has become the hallmark of this case.

On August 7, 2023, Plaintiff Regina Barken ("Plaintiff") filed a set of jury instructions on which the parties had for the most part agreed. ECF

---

[1]The Court convened the status conference after granting Defendants' motion for leave to file a second summary judgment motion. ECF No. 51 and text order dated July 20, 2023 ("The parties shall have until 10/2/2023 to move for leave to file any dispositive motion(s)."). Plaintiff objected to the Court's granting Defendants' motion and has asked that the Court withdraw its order doing so. ECF Nos. 52 and 54. For the reasons stated herein, Plaintiff's request will be denied, and both the Court's order and the October 2, 2023 cutoff date for dispositive motions will stand.

No. 58. Minutes later, Defendants Michael Sarenac, Kent Gordon, James Jordan, Raena Vrtochnick, and Troy Jankowski ("Defendants") filed their own set of proposed jury instructions. ECF No. 59. Taken together, these submissions reflect that the parties do not agree as to the instruction for the underlying crime of obstructing an officer (as relevant to Plaintiff's Fourth Amendment false arrest claim). ECF No. 59. On August 17, 2023, Plaintiff filed objections to Defendants' proposed jury instruction on obstruction. ECF No. 64.

The parties also filed their own sets of "proposed findings of fact," which characterize the facts of this case in quite different ways. *See* ECF Nos. 60, 62. Plaintiff's version of the facts is "taken solely from the Defendants' deposition testimony." ECF No. 60 at 1. Plaintiff later responded to the Defendants' version of the facts. ECF No. 65.

Finally, on August 24, 2023, Plaintiff filed a "proposed plan to move forward." ECF No. 66. Plaintiff's counsel represents that she had sought Defendants' counsel's input on the plan and heard nothing in response; due to concerns about further delays in the case, she proceeded to file the proposed plan for the Court's consideration. *Id.* at 2–3. Defendants have not responded to the proposed plan.

Plaintiff's proposed plan requests that the Court "provide a ruling on the legal disagreement between the parties on what can constitute 'Obstruction'" and then "review the facts proposed by both parties in context of [that] legal ruling . . . [to] determine if the Court wants further briefing on dispositive motions regarding probable cause for arrest." *Id.* at 3. Plaintiff further seeks that the Court review the parties' fact statements and determine if further briefing is warranted with respect to Plaintiff's unreasonable detention claim. *Id.* The proposed plan demonstrates the

parties' respective beliefs that each of these issues is "ripe for summary judgment based on the record." *Id.*[2]

This Order serves a "cleanup" function and is intended to get the case back on track toward efficient resolution. To that end, it addresses Plaintiff's request and rules—to the extent appropriate in the current posture of this case—on some of the parties' disputes regarding the jury instruction for obstruction, leaving other aspects of the parties' apparent disputes for resolution via dispositive motions (or stipulations). Relatedly, this Order denies Plaintiff's motion for the Court to withdraw its text order setting a deadline for summary judgment. ECF No. 52. That order and the October 2, 2023 dispositive motion deadline will both stand, but the Court's prior orders are modified slightly to (1) expressly permit the parties to file cross-motions for summary judgment and (2) remove the requirement that the parties seek leave of court to submit dispositive motions.

Finding that the parties' fact submissions once again fail to comply with the Court's directives, the Court directs the parties to file joint statements of undisputed and disputed facts consistent with the operative pretrial procedures order. In the interest of orderly presentation of all questions that the parties seek to resolve on summary judgment, the Court

---

[2]In the proposed plan, "Plaintiff renews her request that a protective order be entered to mitigate the harm caused by the last-minute adjournment of trial, [and] that any motions in limine based on FRE 401–404 and 609 be determined based on the facts as they exist today." ECF No. 66 at 3. As to the former request, the Court sees no indication anywhere on the docket that Plaintiff has ever formally requested entry of a protective order. Plaintiff remains free to make such a request, consistent the applicable federal and local rules of procedure, including meeting and conferring with Defendants. The latter request need not be resolved by the Court at this juncture but may be raised in pretrial motions if this case is scheduled for trial.

declines Plaintiff's invitation to decide dispositive motions based on briefing already submitted. *See* ECF No. 66 at 3.

### 2.    DISPUTED JURY INSTRUCTIONS

As noted above, Plaintiff asks that the Court make a legal ruling on the parties' disputes as to the applicable legal instruction for "obstruction." ECF No. 66 at 3. Plaintiff's proposed obstruction instruction purports to be based on Wisconsin Pattern Jury Instruction No. 1766 for "obstructing an officer" within the meaning of Wis. Stat. § 946.41(1). ECF No. 58 at 4–5. Plaintiff's proposed instruction defines "obstruction" as "include[ing] [sic] without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer." *Id.* at 4 (quoting Wis. Stat. § 946.41(2)(a); also proffering an additional instruction about what it means to "mislead" and quoting from *State v. Reed*, 695 N.W.2d 315, ¶ 46 (Wis. 2005)).

Defendants propose a three-part instruction for "resisting or obstructing an officer" that similarly purports to be based on Wisconsin Pattern Jury Instruction No. 1766 and various Wisconsin cases. ECF No. 59 at 2–3.[3] Defendants' instruction defines obstruction to include conduct that

---

[3] One of the parties' prior filings proposed an instruction for Attempted Battery to a Law Enforcement Officer in violation of Wis. Stat. §§ 939.32 and 940.203(2), ECF No. 25 at 7–8, in addition to instructions for each of the three below-named offenses under Wis. Stat. § 946.41. Plaintiff points out in her objections that Defendants' present submission does not include the attempted battery instruction and argues that "[a]fter depositions, any factual support for the attempted battery claim disappeared . . . ." ECF No. 64 at 6. Because Defendants do not include any proposed instruction as to attempted battery, the Court assumes they do not intend to make any argument on summary judgment or at trial that Plaintiff was suspected of attempted battery. It should go without saying that if Defendants are pressing a theory that they had probable cause to suspect that Plaintiff committed attempted battery, they must (1) have some factual basis for that assertion and (2) agree with Plaintiff on proper jury instructions for the

"actually misled, delayed, hindered, frustrated, impeded or prevented an investigation." *Id.* at 3. Plaintiff objects that Defendants' proffered instructions are inconsistent with applicable Wisconsin law and, in some respects, with the facts of this case. *See generally* ECF No. 64. The Court will recount further portions of Defendants' proffered instructions, and Plaintiff's objections thereto, as relevant.

For the reasons stated below, the Court finds that Defendants' proffered instructions on "knowledge" and "actual obstruction," ECF No. 59 at 3, are not supported by legal authority and accordingly must be disregarded. The Court will not, however, go so far as to grant Plaintiff's request that the Court "determine that the parties [must] draft jury instructions based on Wisconsin Pattern Jury Instruction Crim-1766A" *alone* or, alternatively, order Defendants to identify their theory or theories of the case and the precise factual bases therefor, ECF No. 64 at 1, as these matters are better aired through a combination of good-faith conferral and dispositive motion practice.

### 2.1    Overview of the Relevant Wisconsin Criminal Statute

Wisconsin law makes it a misdemeanor to "knowingly resist[] or obstruct[] an officer while such officer is doing any act in an official capacity and with lawful authority." Wis. Stat. § 946.41(1). "'Obstructs' includes without limitation knowingly giving false information to the officer or knowingly placing physical evidence with intent to mislead the officer in the performance of his or her duty . . . ." Wis. Stat. § 946.41(2)(a). "Resists" is not defined in the statute.

_____

claim. However, consistent with the balance of this Order, it is not proper at this juncture for the Court to adopt Plaintiff's argument that there is no evidence to support such a claim.

The Wisconsin Pattern Jury Instructions include three instructions under this statute. Wis. Crim. Jury Instruction 1765, *available at* https://wilawlibrary.gov/jury/files/criminal/1765.pdf (last visited Sept. 6, 2023) (titled "Resisting an Officer—§ 946.41(1)") (hereinafter "Instruction 1765"); Wis. Crim. Jury Instruction 1766, *available at* https://wilawlibrary.gov/jury/files/criminal/1766.pdf (last visited Sept. 6, 2023) (titled "Obstructing an Officer—§ 946.41(1)") (hereinafter "Instruction 1766"); and Wis. Crim. Jury Instruction 1766A, *available at* https://wilawlibrary.gov/jury/files/criminal/1766A.pdf (last visited Sept. 6, 2023) (titled "Obstructing an Officer: Giving False Information—§ 946.41(2)(a)") (hereinafter "Instruction 1766A").

Together, these three instructions clarify that resisting an officer involves physical interference whereas obstructing an officer involves nonphysical interference. They further clarify that when nonphysical interference (i.e., obstruction) takes the form of "giving . . . false information" to an officer, it is a distinct offense with a distinct jury instruction. *See* Instruction 1766A.

In Plaintiff's view, Defendants' proposed jury instructions are problematic both because they "ignore these distinctions" between different avenues of violating Wis. Stat. § 946.41 and because they misstate case law relevant to the distinct offenses of obstruction and obstruction by giving false information. ECF No. 64 at 1. The Court addresses each of Plaintiff's arguments in turn.

## 2.2    "Resisting" vs. "Obstructing" in Elements Instruction

First, Plaintiff argues that "[r]esisting and obstructing are two distinct crimes and should not be combined" into a single instruction, as

Defendants have done. *Id.* at 5. Defendants' proposed elements instruction appears as follows:

**FOURTH AMENDMENT: FALSE ARREST ELEMENTS OF OBSTRUCTION**

In order to have had probable cause to arrest a person for *resisting or obstructing* an officer, defendants must have had probable cause to believe each of the following elements:

(1) the person *resisted or obstructed* an officer;

(2) the officer was acting in an official capacity;

(3) the officer was acting with lawful authority; and

(4) the person knew that the officer was acting in an official capacity and with lawful authority and that the person's conduct *would obstruct an officer*.

In this case, there is no dispute the officers were acting in an official capacity and that Plaintiff knew that. So you must determine whether the officers were acting with lawful authority, whether they had probable cause to believe the plaintiffs' [sic] actions materially obstructed legitimate law enforcement efforts and whether Plaintiff knew her actions in response to those orders would actually obstruct.

ECF No. 59 at 2 (emphases added); *compare id., with* ECF No. 58 at 4–5 (Plaintiff's proposed elements instruction). Plaintiff argues that, aside from improperly combining references to two distinct offenses in a single jury instruction, a resisting instruction is wholly inappropriate in this case because "reliance on 'resisting' as an independent reason for arrest has apparently been abandoned by Defendants on the legal principle that if an officer goes to arrest a person without objective probable cause to believe that person has committed a crime, there can be no crime of resisting an officer under Wis. Stat. § 946.41." ECF No. 64 at 6 (citing *State v. Young*, 717 N.W.2d 729, ¶ 78 (Wis. 2006); *Pullen v. House*, 88 F. Supp. 3d 927, 939 (W.D.

Wis. 2015); and *Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 871 (E.D. Wis. 2015)).

First of all, Defendant's own submissions suggest that they are not relying on the theory that they had probable cause to arrest Plaintiff for resisting—that is, physically interfering with, *see* Instruction 1765—an officer's investigation. As demonstrated in the language above to which the Court added emphasis, Defendants' proposed instructions reference "obstructing or resisting" twice but later refer only to conduct that "would obstruct an officer." ECF No. 59 at 2. Moreover, Defendants only propose additional instructions relevant to an "obstruction" and propose no further instructions relevant to a "resisting" offense. *See id.* at 3 (proposing language for "actually obstructed" and "plaintiff knew her conduct would obstruct" elements).[4] Defendants' proposed instructions do not include language that appears in Instruction 1765 about whether Plaintiff "oppose[d] the officer by force or threat or force" or whether her "resistance [was] directed to the officer personally." It would appear, then, that Defendants' theory of the case is that they had probable cause to arrest Plaintiff for obstructing—that is, nonphysically interfering—and view a resisting theory as inapplicable. Plaintiff perhaps could have determined this by either taking a closer look at Defendants' submission in comparison to the relevant pattern instructions or by asking Defendants for further clarification before seeking the Court's intervention.

Ultimately, though, and contrary to Plaintiff's urging, it is not appropriate at this juncture for the Court to say definitively that a resisting

---

[4]It bears mentioning that Plaintiff's own proposed elements instruction uses the phrase "resisting or obstructing" in one place. ECF No. 58 at 4.

instruction is unnecessary here. Plaintiff argues that Defendants must have abandoned (or cannot sustain) a claim that they had probable cause to arrest Plaintiff for "resisting," because such resistance would have been privileged if Defendants did not have probable cause to arrest her. ECF No. 64 at 6; *see also* ECF No. 58 at 4, nn.2–4 (discussing privilege instructions).

If Defendants plan to take the position that that they had probable cause to arrest Plaintiff based on her physically resisting an officer without some other underlying probable cause for a distinct crime (in other words, that their legal basis for Plaintiff's arrest was her physically resisting arrest), such a position would be tautological and, frankly, nonsensical. But Plaintiff's argument essentially asks the Court to make a ruling now that Defendants were acting without lawful authority to arrest her (for *any* crime, or specifically for purposes of a "resisting" instruction, for the offense of physically resisting arrest)—despite Plaintiff herself later describing the "lawful authority" to arrest element as "highly contested." ECF No. 64 at 6. This is fundamentally a request for a merits ruling, which is not properly before the Court.[5]

Rather than spending any more time speculating about how Defendants will argue, Plaintiff's counsel can clarify with Defendants' counsel whether they intend to argue a "resistance" theory at all and seek Defendants' stipulation that they will not do so.[6] If Defendants will not so

---

[5]This is not the first time that Plaintiff has asked the Court to make a merits ruling through an improper procedural vehicle, *see* ECF No. 49 (rejecting Plaintiff's attempt to get a ruling on a dispositive issue through a motion under Civil Local Rule 7(h)), but it should be the last.

[6]Defendants' counsel is warned that this Court is growing mightily tired of what it sees as the Milwaukee City Attorney's Office's continuing obfuscation in this case. *See, e.g.*, text order dated August 25, 2023 (ordering Defendants to make

stipulate, Plaintiff is free to argue on summary judgment that there is no basis (legal, factual, or otherwise) for Defendants to claim that their arrest of Plaintiff was proper because they had probable cause that she was physically resisting arrest. But at this time, the Court will go no further than to find that resisting and obstructing are indeed two distinct offenses or ways of violating Wis. Stat. § 946.41 and should not be combined into a single instruction. For purposes of Plaintiff's Fourth Amendment unreasonable seizure claim, if Defendants allege they had probable cause that Plaintiff was resisting or, in the alternative, obstructing, then "resisting" and "obstructing" must be explained via separate instruction(s).[7]

### 2.3 Knowledge Instruction

Next, Plaintiff takes issue both with Defendants' proposal to stray from the pattern instructions' "Deciding About Knowledge" language and the knowledge instruction that Defendants suggest using instead.[8] ECF No. 64 at 6–9. Defendants' proposed knowledge instruction reads as follows:

Rule 26 Initial Disclosures—well over a year into this litigation). The Court can and will, if necessary, sanction Defendants if it finds that they are pressing arguments with no basis in law or factual contentions with no evidentiary support. Fed. R. Civ. P. 11(b)(2)–(3).

[7]Plaintiff raises two other minor quibbles with Defendants' proposed elements instruction. ECF No. 64 at 5, nn. 1–2 (objecting to inclusion of Fourth Amendment in title of instruction and to inclusion of the "official capacity" element because the parties have stipulated that Defendants were acting in their official capacities). The Court expresses no opinion on these non-dispositive changes; if these changes are important to Plaintiff and remain necessary in future versions of the elements instruction, she should seek Defendants' consent to change them. These are essentially matters of form, not substance, and should not require the Court's attention.

[8]Plaintiff similarly argues that Defendants' proposed elements instruction improperly omits the statutory definition of obstruction—which specifies that the

**FOURTH AMENDMENT: FALSE ARREST ELEMENTS OF OBSTRUCTION – PLAINTIFF KNEW HER CONDUCT WOULD OBSTRUCT**

In determining whether Defendants had probable cause to arrest for obstruction, you must also decide whether the police officers had probable cause to believe *Plaintiff knew her actions in response would obstruct police*. If you find the police officers had probable cause to believe that the Plaintiff's actions actually obstructed the police from conducting their investigation, you must decide whether the police officers had probable cause to believe . . . [that] [P]laintiff[] *knew that the investigation was legitimate and that [her] actions in response would obstruct the police*.

ECF No. 59 at 3 (emphases added). In contrast, Plaintiff proposes that the jury be instructed on knowledge using nearly the same language that appears in Instructions 1766 and 1766A:

**Deciding About Knowledge**

You cannot look into a person's mind to find knowledge. Knowledge must be found, if found at all, from the person's acts, words, and statements, if any, and from all the facts and circumstances in this case bearing upon knowledge.

ECF No. 58 at 5.[9] In her objections, Plaintiff seems to request that a knowledge instruction be "tailored to the facts of this case," including

---

offense must be committed "knowingly," *see* Instruction 1766 at 1 and Instruction 1766A at 1—and that such omission "risks improperly leading the jury to believe that the knowledge element is not part and parcel of the obstruction charge." ECF No. 64 at 6.

[9]Plaintiff's proposed language mirrors Instruction 1766 exactly except that it replaces "defendant" with "person." *Compare* ECF No. 58 at 5, *with* Instruction 1766 at 2. Plaintiff also discards, without explanation, Instruction 1766A's slightly different formulation of the knowledge element. *Compare* ECF No. 58 at 5, *with* Instruction 1766A at 2 ("You cannot look into a person's mind to find *intent and* knowledge. *Intent and* knowledge must be found, if found at all, from the [person's] acts, words, and statements, if any, and from all the facts and

identifying "which [of Defendants'] actions" Plaintiff was responding, but she offers no suggested language for such a case-specific knowledge instruction. ECF No. 64 at 9.

Plaintiff's concern is that Defendants' proposed instruction improperly focuses the factfinder on certain aspects of Plaintiff's knowledge and draws the factfinder's attention away from others, whereas the Wisconsin pattern jury instructions lay out a "totality of the circumstances" test for knowledge. *Id.* at 7–9. Specifically, Plaintiff argues that Defendants' knowledge instruction focuses too much on "whether Plaintiff 'knew her conduct would obstruct'" and too little on "whether Plaintiff believed the officers were acting 'with lawful authority.'" *Id.* at 8. She further argues that Defendants' formulation of the knowledge instruction improperly "focuses on whether Plaintiff 'knew that the investigation was legitimate,' which is the only element of this crime to which Plaintiff *stipulated*," seemingly framing the legitimacy of the investigation as an issue of official capacity rather than lawful authority. *Id.*; *see also id.* at 3 n.2; ECF No. 59 at 2 (noting that Defendants' acting in an official capacity is an element to which the parties have stipulated).

First, the Court is not persuaded that Defendants' instruction attempts to undo a stipulation between the parties as to official capacity. Plaintiff offers no further explanation, let alone legal authority, to support the notion that "the legitimacy of an investigation" is solely a matter of whether an officer acts in his or her official capacity—why wouldn't the legitimacy of an investigation relate, at least in part, to whether it is done

---

circumstances in this case bearing upon *intent and* knowledge." (emphases added)).

with lawful authority and supported by a proper legal basis? Defendants' proposed elements instruction, which points out that the official capacity element is stipulated but instructs the factfinder to determine "whether the officers were acting with lawful authority, [and] whether they had probable cause to believe [that Plaintiff's] actions materially obstructed legitimate law enforcement efforts," ECF No. 59 at 2, heightens the Court's skepticism of Plaintiff's argument that "the legitimacy of [the] investigation" in the knowledge instruction refers solely to the official capacity element to which the parties have stipulated. Again, this is an issue Plaintiff should have discussed with Defendants before seeking the Court's intervention.

In any event, the Court ultimately concurs with Plaintiff that Defendants' proposed knowledge instruction is an unwarranted departure from the Wisconsin pattern jury instructions and case law. Defendants' proposed knowledge instruction not only approaches "word salad" territory and therefore seems unlikely to aid a jury in deciding the knowledge element, but also is unsupported by the authority Defendants cite. ECF No. 59 at 3 (citing *State v. Lossman*, 348 N.W.2d 159 (Wis. 1984)). *Lossman* states that the knowledge element of an obstruction offense, which is "subjective," must be "ascertained[] based on the totality of the circumstances, including what the defendant said or did, *what the officer said or did,* and any objective evidence which is available." 348 N.W.2d at 167 (emphasis added).

Defendants' proffered instruction focuses almost entirely on what Plaintiff knew or believed about the impact that her behavior would have on Defendants and too little on what Plaintiff knew or believed about whether Defendants were acting with lawful authority. Plaintiff has maintained throughout this case that her acts in opposition to arrest or

detention were privileged because Defendants at no time had a legally valid basis to arrest or detain her. Her subjective belief about Defendants' lawful authority to engage with her is therefore highly relevant to any obstruction instruction. *See Hardy v. City of Milwaukee*, 88 F. Supp. 3d 852, 871 (E.D. Wis. 2015) (stressing "the requirement that the officers must have been acting 'with lawful authority,'" which entails examining whether a person "would understand that [the officers] were acting without lawful authority," as an element of an obstruction offense under Wisconsin law).

Defendants' proposed knowledge instruction attempts to gloss over the relevance of what Plaintiff knew or believed about Defendants' conduct. The Court must therefore reject it as out of line with relevant legal authority. As noted above, Plaintiff's proposed instruction tracks the Wisconsin pattern jury instructions on knowledge for an obstruction offense, and although she suggests that a more tailored instruction may be warranted in this case, she provides none. The parties are therefore instructed to confer and develop a proper knowledge instruction, using the "Deciding About Knowledge" language in Instructions 1766 and 1766A as a template and taking into account the Court's findings in this section.

### 2.4    Instruction as to Actual Obstruction

Finally, Plaintiff takes issue with Defendants' proposed instruction for "actually obstructed." ECF No. 64 at 9. Defendants propose the following:

**FOURTH AMENDMENT: FALSE ARREST ELEMENTS OF OBSTRUCTION – ACTUALLY OBSTRUCTED**

In determining whether Defendants had probable cause to arrest for obstruction, you must decide whether officers had probable cause to believe Plaintiff's actions *actually misled, delayed, hindered, frustrated, impeded or prevented an*

*investigation.* If you find the police officers had probable cause to believe the situation involved sufficient *misleading* conduct, delay, hindrance, frustration, impediment, or prevention of the investigation by the Plaintiff, you must then decide whether the officers had *probable cause to believe that the plaintiffs' actions actually obstructed* the police from their investigation.

The action justifying an arrest for obstruction cannot simply inconvenience the police officers.

You must decide whether Defendants had probable cause to believe the Plaintiff *actually delayed, hindered, frustrated, impeded, or prevented the Defendants' investigation,* and *that this conduct actually made a difference in the officers' ability to investigate.* If you find that Defendants did not have probable cause to believe that Plaintiff was *delaying, hindering, frustrating, impeding, or preventing an investigation* or did not have probable cause to believe that *any disobedience would actually interfere with officers' ability to conduct the homicide investigation,* you must find in favor of the Plaintiff on her false arrest claims.

ECF No. 59 at 3 (emphases added).[10] As with the proposed resisting instruction, *see supra* Section 2.2, Plaintiff takes issue both with how this proposed instruction is phrased and with it being adopted at all. Plaintiff does not propose any instruction regarding "actual obstruction" because, as discussed below, she argues that the concept of actual obstruction is not relevant to the facts and operative legal theory in this case.

---

[10]As shown in the quoted text, Defendants' proposed instructions reference "misleading" twice in the first paragraph (in the list of conduct that can be considered obstructing), but forego including "misleading" in the same list when it appears in the third paragraph. It is unclear why they did so. For similarly unclear reasons, Plaintiff's filings purport to reproduce Defendants' proposed instructions, but do not include Defendants' two uses of "misleading." *See* ECF Nos. 58 at 6–7 and 64 at 9–10. The Court uses the version of Defendants' proposed instructions that Defendants themselves submitted, ECF No. 59.

The Court agrees with many of Plaintiff's arguments—specifically, that the substance of Defendants' proposed "actual knowledge" instruction blurs the distinctions between obstruction as defined in Instruction 1766 and obstruction by giving false information as defined in Instruction 1766A, and that it misstates the law relevant to each. *See* ECF No. 64 at 9–22.

Based on Defendants' inclusion of the word "mislead," *see supra* note 10, it is reasonable to assume that they are pursuing both theories of an obstruction offense in this case—obstruction as defined in Instruction 1766 *and* obstruction by giving false information as defined in Instruction 1766A. It appears that Defendants are attempting to combine elements of both into a single instruction. This is inappropriate for two reasons.

First, it is inappropriate to combine instructions for the two offenses because they entail "alternative modes of proof." *State v. Caldwell*, 454 N.W.2d 13, 16 (Wis. Ct. App. 1990) (citing *State v. Crowley*, 422 N.W.2d 847, 849 (Wis. 1988)). In other words, there is a reason why Wisconsin lawmakers saw fit to issue Instructions 1766 and 1766A separately. But Defendants' proposed instruction ignores the intentional differentiation between the two.

Second, "actual obstruction"—or, cast in broader terms, the effect of the person's allegedly obstructing behavior on the officer—is only an element of the obstruction offense as defined in Instruction 1766 and is not relevant to an obstruction by giving false information offense as defined in Instruction 1766A. *See id.* ("The jury was thus told that 'obstruct' had two discreet [sic] meanings: making more difficult; likewise, illustrated by knowingly giving false information with intent to mislead. Under the first meaning, the effect of Caldwell's conduct on Officer Stern was relevant; under the second, it was not."); *accord State v. Reed*, 695 N.W.2d 315, ¶ 30

(Wis. 2005) ("[I]t is well-established that obstruction in this context need not focus on whether the police were actually thwarted in their investigation. . . . Concluding otherwise . . . encourages people to lie to police."). Whether a person's conduct *did*, in fact, obstruct an officer is only relevant where the obstruction offense consists of "prevent[ing] or mak[ing] more difficult the performance of the officer's duties." Instruction 1766 at 1. In contrast, Instruction 1766A makes clear that to find that a person "intended to mislead the officer . . . *it is not required that the officer was misled*." Instruction 1766A at 2 (emphasis added). The commentary to Instruction 1766A reinforces the point: "[G]iving false information with intent to mislead constitutes "obstructing" as a matter of law. There is no need for further proof that the defendant's conduct made the officer's performance of duties more difficult." *Id.* at 3 (citing *Caldwell*, 454 N.W.2d at 15). Defendants' proposed instruction inappropriately imposes an element of one offense onto another offense to which it does not apply.

On a similar note, the Court agrees with Plaintiff that Defendants' proposal to include language suggesting that the standard for obstruction is "any disobedience" to a police action finds no support in the law. ECF No. 59 at 3; ECF No. 64 at 18. Plaintiff correctly observes that "not every barrier placed in the path of an officer gives rise to a violation of Sec. 946.41(1)." ECF No. 64 at 13 (quoting *State v. Hamilton*, 356 N.W.2d 169, 171 (Wis. 1984)). Defendants' proposed language, although framed in negative terms ("If you find that Defendants did not have probable cause to believe that . . . any disobedience would actually interfere with officers' ability to conduct the homicide investigation, you must find in favor of the Plaintiff on her false arrest claims."), is likely to lead a jury to confuse the standard for a charge of obstruction. Moreover, Defendants have offered no

authority or explanation for the specific "any disobedience" language, and it is arguably at odds with the case law. *See, e.g.*, *Henes v. Morrissey*, 533 N.W.2d 802, 808 (Wis. 1995) ("The action justifying an arrest for obstruction cannot simply 'inconvenience' the official . . . .") (quoting *Hamilton*, 356 N.W.2d at 171); *State v. Griffith*, 613 N.W.2d 72, ¶ 52 (Wis. 2000) ("The passenger had every right to decline to answer [police questions], and his refusal to answer could not have resulted in prosecution for obstructing an officer. . . . His refusal to answer also would not have given rise to any reasonable suspicion of wrongdoing." (first citing *Henes*, 533 N.W.2d at 808 then citing *Florida v. Bostick*, 501 U.S. 429, 437 (1991))).

One final issue with Defendants' proposed instruction—though this issue is a close call—is that they have not provided a good reason why it is appropriate to include the enumerated list "misled,[11] delayed, hindered, frustrated, impeded or prevented an investigation" to define what it means to obstruct and/or actually obstruct.[12] Instruction 1766 defines "obstructed" as conduct that "prevents or makes more difficult the performance of the officer's duties." Instruction 1766 at 1. Defendants' enumerated list comes from the commentary to that instruction, which states:

> This part of the definition of "obstruct" was adapted from the one found in the 1966 version of Wis JI-Criminal 1765 which referred to "hinder, delay, impede, frustrate or prevent" an

---

[11]Because obstruction and obstruction by giving false information are distinct, including "misled" in this enumerated list is inappropriate in any circumstance.

[12]To the extent a separate "actually obstructed" instruction is even necessary in this case, the definition of what constitutes "obstruction" should not appear for the first time in that instruction. But that is what Defendants have done here: their elements instruction does not define "obstruction" at all, instead incorporating the definition of that element into the "actually obstructed" explanation. ECF No. 59 at 2–3.

officer from performing his duties. No change of meaning is intended. . . .

The instruction's definition of "obstruct" was referred to with apparent approval [but without citing the instruction] in *State v. Grobstick*, 200 Wis.2d 242, 249, 546 N.W.2d 187 (Ct. App. 1996), where the court found that the defendant's jumping out a window and then returning to hide in a closet "made more difficult" the execution of a bench warrant.

*Id.* at 3 (brackets in original).

The Court is not persuaded by Plaintiff's argument that "Wisconsin courts have signaled, without deciding, that [the] old version of the pattern instruction was unconstitutionally ambiguous." ECF No. 64 at 11. Plaintiff misconstrues and overstates the effect of the case law she cites. *Id.* at 11–13 (citing *Hamilton*, 356 N.W.2d 169; *Caldwell*, 454 N.W.2d 13; and *Grobstick*, 546 N.W.2d 187). In *Hamilton*, the Wisconsin Supreme Court avoided the question of "whether sec. 946.41(1) is unconstitutionally vague," instead deciding the case on the issue of "whether the evidence is sufficient to support a conviction." 356 N.W.2d at 172–73. But more to the point, the Wisconsin Supreme Court there was *not* deciding whether the jury instruction itself, which defined "obstructs" as "to hinder, delay, impede, frustrate or prevent," was unconstitutional. The language Plaintiff cites from *Hamilton* as ostensibly suggesting that the Wisconsin Supreme Court expressed any view whatsoever on this matter—that the statute "proposed 'a virtually limitless range of conduct,'" ECF No. 64 at 12 (citing *Hamilton*, 356 N.W.2d at 172)—is the Wisconsin Supreme Court's description of the defendant's argument for unconstitutionality; it has no legal significance. *Caldwell*, similarly, avoided the issue. 454 N.W.2d at 15 ("[T]he *Hamilton* court did not determine what 'obstruct' may mean" and "assumed *arguendo*" that it meant "to hinder, delay, impede, frustrate, or prevent . . .

As in *Hamilton*, the precise definition of 'obstruct' need not be determined for purpose of resolving the issue at hand").[13]

The combination of *Grobstick* and the commentary to Instruction 1766 lend more support to Plaintiff's argument that Defendants' enumerated list is inappropriate, but again, neither addresses the constitutionality of Defendants' enumerated list. As the Instruction 1766 commentary excerpted above states, *Grobstick* uses that Instruction's definition of obstruction, "prevents or makes more difficult," but makes no comment about the "hinder, delay, impeded, frustrate, or prevent" formulation. 546 N.W.2d at 190 ("The jury was instructed, without objection from Grobstick, that 'obstructing' means 'that the conduct of the defendant prevents or makes more difficult the performance of the officer's duties.'").

At the end of the day, Plaintiff's arguments are not convincing, but Defendants have also not provided any good reason to use language from an older version of the Wisconsin jury instructions which now only appears in the commentary to the current version. The Court will presume the drafters of the pattern jury instructions made these choices intentionally; Defendants have not made a compelling argument to the contrary. The Court sees no compelling reason why "delayed, hindered, frustrated, impeded or prevented an investigation" is either legally justified or any clearer or more helpful to a jury than "prevents or makes more difficult," as expressed in current Instruction 1766.

This is where the Court's agreement with Plaintiff ends. As mentioned above, Plaintiff argues not only against the substance of

_____

[13]Plaintiff also has not addressed Instruction 1766's explicit admonition that "[n]o change of meaning is intended" by the adaptation of "hinder, delay, impede, frustrate or prevent" to the current language. Instruction 1766 at 3.

Case 2:22-cv-00783-JPS    Filed 09/11/23    Page 20 of 30    Document 68

Defendants' proposed "actually obstructed" instruction, but against it being given at all. In her view, any theory that she committed obstruction, as defined in Instruction 1766, is "not born[e] out by the facts of this case." ECF No. 64 at 1. Accordingly, she argues that the Court should find that *only* Instruction 1766A is relevant. *See id.* at 17 ("In sum, if the jury instructions are to follow the actual *evidence* . . . a form of Pattern Jury Instruction 1766A should be given, to see if the jury believes that Ms. Barken was intentionally misleading police by giving them a fake phone as Lt. Jankowski testified, which will obviate any need for the jury to decide . . . whether the Defendants were *actually obstructed*."). In the alternative, "if the Court would permit the Defendants to give an instruction on the vague theory of obstructing police by being 'disobedient,'" she "requests that the Defendants be ordered to identify the moment where Defendants claim Barken 'obstructed' through 'disobedience,' so that the Court can even begin to identify *what lawful authority* existed . . . ." *Id.* at 1; *see also id.* at 15 ("[T]he Defendants will still need to identify *what they claim the basis for obstruction was* . . . .").

Although Plaintiff spends a large proportion of her objections on this argument, *id.* at 14–22, the Court can make quick work of it, because once again, this argument inappropriately urges the Court to make a merits ruling—to apply the law to the facts—through a procedural vehicle. Plaintiff argues that "Defendants do not explain why their testimony suggests that the only arguable probable cause to arrest was supplied by Ms. Barken's alleged intent to mislead the officers with a fake or broken phone . . . ." *Id.* at 16–17. As a result, Plaintiff says, in order to justify allowing Instruction 1766 for obstruction to be applied in this case, Defendants should be required to "identify *what they claim the basis for*

*obstruction was*" and what their "lawful authority to order [Plaintiff] around" was. *Id.* at 17, 22. This boils down to a request that the Court, at this juncture, find that any claim by Defendants that they had probable cause to arrest Plaintiff for obstructing, as defined in Instruction 1766, lacks a factual basis. This request is not properly before the Court.

Plaintiff's frustration that Defendants "have continuously shifted their theory on the underlying crime," *id.* at 1, is not a reason for the Court to skip directly to a ruling on the merits. This rings especially true because the Court *has* re-established a (quickly approaching) dispositive motion deadline, which is the appropriate time for Plaintiff to put requests for dispositive rulings before the Court. Again, Plaintiff is free to argue on summary judgment—the "'put up or shut up' moment in a lawsuit," *Schacht v. Wis. Dep't of Corr.*, 175 F.3d 497, 504 (7th Cir. 1999)—that there is no basis (legal, factual, or otherwise) for Defendants to claim that their arrest of Plaintiff was proper because they had probable cause that she was obstructing. But the Court will go no further than to find that Defendants' "actually obstructed" instruction is inappropriate for the reasons and on the bases set forth above. The Court will not at this time preclude Defendants from proceeding on alternative theories or "modes of proof" for obstruction, *Caldwell*, 454 N.W.2d at 16. But it will instruct that, if Defendants intend to do so, each mode of proof must be explained via separate instruction(s). The parties are instructed to confer and develop the appropriate instructions, using Instructions 1766 and/or 1766A as a template and taking into account the Court's findings in this section.

### 2.5    Additional Guidance and Next Steps

Although not concurring with Plaintiff in all of her arguments, the Court has provided Plaintiff's sought-after legal ruling on the obstruction

issue. ECF No. 66 at 3. And although the Court notes that some differences exist between Plaintiff's and Defendants' proposed jury instructions on other claims, *see* ECF Nos. 58 and 59, it appears that these differences are minor or immaterial and can likely be resolved through further conferral in light of this Order. *See also* ECF No. 66 at 2 (Plaintiff stating that "there is only one significant disagreement" between the parties as to jury instructions).

The parties' next step is to confer and make every attempt to agree upon proposed jury instructions in light of the Court's findings herein. They should then submit a single set of proposed jury instructions alongside any dispositive motions on or before October 2, 2023. If the parties cannot agree on some of the proposed jury instructions, then they should still file their jury instructions as a single document, setting forth those instructions they agree on, and those which they do not agree on, together with each party's respective legal authority for their proffered version of the disputed instruction. Then, each party must explain why the case(s) support their position regarding the disputed instruction in the motion for summary judgment briefing, keeping within the standard page allotment. *See* Civ. L.R. 7(f) and 56(b)(8)(B).

The Court issues these instructions to make clear that it will no longer tolerate anything except streamlined presentation of what should be relatively straightforward legal issues. The parties in this case have so far submitted filings that fragment the issues and reflect bitter partisanship rather than any sincere efforts to cooperate and compromise. The Court's patience for such filings is at its end.

### 3. PARTIES' FACT SUBMISSIONS

Speaking of fragmented filings, the Court will again reject the parties' separate proposed findings of fact. ECF Nos. 60, 62. These filings reflect that the parties characterize the operative facts in very different ways. *Compare, e.g.*, ECF No. 62 at 2 (Defendants' fact statement, stating that "Detectives Vrtochnick and Sarenac spent several hours negotiating with Barken how to retrieve the phone from her home while at the hospital, and trying to persuade Barken to view a photo array to identify the alleged homicide suspect"), *with* ECF No. 60 at 2–3, 5 (Plaintiff's fact statement, describing how she "offered to retrieve the phone," was "willing to allow a uniformed/marked squad to convey her to her home," and "remained cooperative."). These submissions do not provide a coherent basis for the Court to determine what is, indeed, in dispute—one could draw the conclusion from the parties' submissions that they view nearly every fact as in dispute in some fashion—nor are these submissions even all that illuminating about what happened and in what order.

The parties are therefore ordered, once again, to submit a single statement of undisputed facts at the time dispositive motions are filed. This statement must be written in narrative, paragraph form and drafted in chronological order.[14] Preparation of this statement of undisputed facts does not mean that either party concedes that any agreed-upon fact is material; determinations of materiality are for the Court and therefore should be argued as appropriate in the briefing.

---

[14]The parties should omit a facts section from their briefing; the Court will only consider the single, agreed-upon statement of facts.

To the extent there are factual disputes (including if a party refuses to stipulate to a fact as undisputed), the parties must also jointly submit a single, itemized statement of disputed facts, written in list form, at the time dispositive motion(s) are filed. No responses or replies to the statement of disputed facts will be permitted; the statement of disputed facts should be comprehensive. Each itemized, disputed fact should be supported by each party's separate pinpoint citation(s) to the record. Preparation of this list does not mean that either party concedes that any itemized disputed fact is material or genuinely disputed; again, these arguments should be made in the briefing. The statement of disputed facts may not exceed five (5) double-spaced pages.

If the parties once again file fact statements that do not comply with this Court's directives, the Court will not hesitate to impose sanctions on the offending party or parties, including but not limited to denial of dispositive motions, setting the case for trial, ordering the parties to mediation, or imposition of attorney's fees. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016) ("[A] court has the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–50 (1991)).

## 4.  PLAINTIFF'S REQUEST TO CONSIDER PRIOR BRIEFING

Plaintiff also requests that the Court consider previously-submitted briefing on at least one legal issue. ECF No. 66 at 3. The Court will not do so. The Court appreciates Plaintiff's concern for efficient dispute resolution but will not go sifting through the record at the parties' beck and call when their own failures to cooperate have led to the present state of affairs. The

parties are free to incorporate material from prior submissions into new filings.

**5.     PLAINTIFF'S MOTION TO WITHDRAW COURT ORDER**

The Court begins this discussion by recounting some relevant history. On July 20, 2023, Defendants moved for leave to refile a second summary judgment motion, to extend the deadline in which to do so, and to accordingly stay the trial originally scheduled for August 2023 and other deadlines. ECF No. 51. The motion did not indicate that Defendants had conferred with Plaintiff prior to filing nor indicate whether Defendants anticipated Plaintiff would oppose the motion. The same day, the Court addressed the motion in a text order, giving the parties until October 2, 2023 to move *for leave* to file dispositive motions, and vacating the trial and trial-related dates.

On July 24, 2023, Plaintiff filed a Local Rule 7(h) motion requesting that the Court withdraw its text order "as improvidently granted." ECF No. 52. Plaintiff also filed *instanter* her brief in opposition to Defendant's July 20 motion. ECF No. 54. Defendants did not file any response or opposition. For the reasons stated below, Plaintiff's motion will be denied, but the Court's prior orders will be modified to assure that both parties have the opportunity to move for summary judgment.

Plaintiff first argues that addressing Defendants' motion for leave to file without waiting for her input was improper, suggesting that doing so was a Due Process violation. ECF No. 52 at 1. This argument is unpersuasive because the cases she cites for this proposition are inapposite. They are about what process is required prior to deprivation of protectable interests in government benefits and public employment. *See id.* (citing *Fuentes v. Shevin*, 407 U.S. 67, 83 (1972) and *Cleveland Bd. of Educ. v.*

*Loudermill*, 470 U.S. 532, 546 (1985)). Plaintiff has not provided, and the Court has not located, any authority indicating that Plaintiff has a protectable interest in responding to a non-dispositive motion for a procedural order. See 21 MOORE'S FEDERAL PRACTICE – CIVIL § 327.15 (noting that courts need not await a response before ruling on a "motion for a procedural order," which is an order that does "not substantially affect[] rights of parties or ultimate disposition"). Plaintiff has not pointed to any *right* of hers that was impaired by the Court's addressing Defendant's motion without waiting for her response. The Court did not grant any relief by addressing the motion; it exercised its inherent power to manage its own docket "so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)).

Plaintiff's other arguments focus on the procedural propriety and relative efficiency of the Court having granted Defendants' motion. Plaintiff argues that delays in getting this case to trial cause safety concerns for her (i.e., the longer this case is pending, the greater the risk to Plaintiff of retribution for her providing information to police). ECF No. 52 at 2. This argument is unpersuasive because, (1) as noted *supra* note 2, Plaintiff has not requested a protective order or raised privacy and safety concerns heretofore, and (2) Plaintiff has not explained why getting her case to trial—which would very much be public—sooner addresses her safety concerns, nor has she explained why her safety concerns would automatically disappear after trial is held.

Plaintiff also argues that Defendants brought the motion for leave to file in bad faith by failing to confer with her ahead of time and perhaps by actively misrepresenting (by omission) their plan to refile for summary

judgment. *Id.* While Defendants' failure to confer with Plaintiff before moving is objectionable, the Court finds it hard to believe that Plaintiff was blindsided by the motion. Plaintiff has been on notice since the Court denied the parties' earlier cross-motions for summary judgment that it would entertain renewed motion(s) for summary judgment. ECF No. 45 at 5–6 (June 1, 2023 order admonishing parties to "find a way to move this case forward, whether through seeking leave of court to refile a motion for summary judgment in compliance with the Court's protocols, preparing for trial on the dates previously schedule, or trying again to reach a negotiated resolution"). That Plaintiff preferred the second of these options while Defendants preferred the first does not bind the Court to permit Plaintiff to proceed to trial.

Finally, Plaintiff argues that there is no "reasonable basis" or good cause to continue the trial because factual disputes will preclude summary judgment on some claims and undisputed facts entitle Plaintiff to summary judgment on the unreasonable detention claim, but Defendants are stonewalling efforts to develop these undisputed facts. ECF No. 52 at 3. These concerns are not persuasive because whether material facts are disputed or undisputed is precisely the sort of determination the Court makes on summary judgment. The Court's directives aim to help the parties get real about what facts are material and disputed, and to present those facts in an orderly manner.

For all these reasons, the Court sees no basis to grant Plaintiff's motion to vacate nor to vacate the October 2, 2023 dispositive motions deadline. However, in the interest of assuring that both parties have the opportunity to move for summary judgment on the legal issues they would seek to dispose of before trial, the Court modifies its prior orders as follows.

The Court retracts its statement that it will "consider but is unlikely to entertain . . . cross-motions for summary judgment." ECF No. 45 at 5 n.4. Both Plaintiff and Defendants are free to move for summary judgment by the deadline specified, provided that their submissions conform with the directions herein and the Court's pretrial procedures order. Further, the Court will remove the requirement that "the parties must seek leave to file dispositive motion(s), attaching the proposed dispositive motion materials." Text order dated July 20, 2023. The parties may simply file their dispositive motion submissions on that date, keeping in mind that—as the Court has already warned many times—failure to follow its directives may result in summary denial of the motions.

6.     **CONCLUSION**

This case has taken up a disproportionate amount of the Court's time and resources, and all to achieve resolution of non-dispositive issues. Recent filings have shown that the parties do not appear to be communicating fully and honestly with one another, or really communicating at all. This pattern cannot continue. It is time for the parties to focus every effort on working toward the efficient resolution of the case, which, at least in this branch of the Court, entails collaboration and compromise. As this Order should make clear, anything less than open communication, collaboration, and compromise will likely lead to the implosion of this case and sanctions against one or both attorneys.

Accordingly,

**IT IS ORDERED** that Plaintiff Regina Barken's expedited motion to withdraw the Court's July 20, 2023 text order, ECF No. 52, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the Court's prior order, ECF No. 45, and text order dated July 20, 2023 be and the same are hereby **MODIFIED** as stated herein; and

**IT IS FURTHER ORDERED** that, in light of the Court's directives herein, the parties meet and confer to craft joint proposed jury instructions and joint fact statements to be filed on or before the October 2, 2023 deadline for dispositive motions.

Dated at Milwaukee, Wisconsin, this 11th day of September, 2023.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge